IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   11-cv-01728-PAB-MJW

FRANCISCO ALTAMIRANO,

Plaintiff(s),

v.

CHEMICAL SAFETY AND HAZARD INVESTIGATION BOARD,

Defendant(s).

---

**ORDER REGARDING**

**(1) MOTION TO QUASH BY NONPARTY BUREAU OF THE FISCAL SERVICE
(DOCKET NO. 52)**

**AND**

**(2) MOTION FOR PROTECTIVE ORDER BY NONPARTY BUREAU OF THE FISCAL
SERVICE (DOCKET NO. 54)**

---

**Entered by Magistrate Judge Michael J. Watanabe**


This matter was before this court on June 6, 2013, for hearing on: (1) the Motion

to Quash by Nonparty Bureau of the Fiscal Service (docket no. 52) and (2) the Motion

for Protective Order by Nonparty Bureau of the Fiscal Service (docket no. 54).  The

court has reviewed the subject motions (docket nos. 52 and 54), the responses (docket

nos. 59 and 60), the replies (docket nos. 63 and 64), and the Joint Status Report

(docket no. 67).  In addition, the court has considered applicable Federal Rules of Civil

Procedure, case law, and oral argument by counsel for Plaintiff and the Nonparty and

has taken judicial notice of the court file.  The court now being fully informed makes the

2

following findings of fact, conclusions of law, and order.

**FINDING OF FACT AND CONCLUSIONS OF LAW**

The court finds:

1. That I have jurisdiction over the subject matter and over the parties to this lawsuit;

2. That venue is proper in the state and District of Colorado;

3. That each party has been given a fair and adequate opportunity to be heard;

4. That Plaintiff Francisco Altamirano is a 59-year-old Mexican-American man who worked for the United States Chemical Safety and Hazard Investigation Board ("CSB") between July 2002 and November 16, 2009. In this employment case, Plaintiff has claimed, *inter alia*, that the CSB discriminated against him because of his race, national origin, and/or age in terminating his employment. Plaintiff used his government-travel charge cards while he was employed by CSB. These cards can only be used for government travel, and CSB cardholders, like Plaintiff, are responsible for timely payment. The Bureau of the Public Debt ("BPD") has been consolidated into the Bureau of the Fiscal Service, and it administers certain aspects of the government travel charge card program for CSB employees;[1]

---

[1]Pursuant to Treasury Order 136-1, issued on October 7, 2012, the bureaus formerly known as the Bureau of the Public Debt and the Financial Management

5.     That Plaintiff has noticed the deposition of the BPD [n/k/a Bureau of

Fiscal Service] under Fed. R. Civ. P. 30(b)(6) and has served a

subpoena upon the BPD.  In the subject motions (docket nos. 52

and 54), the BPD seeks an Order from this court quashing the

subpoena and staying the deposition because it would require

testimony beyond that authorized under BPD's *Touhy* regulations.

See <u>U.S. ex rel. Touhy v. Ragen</u>, 340 U.S. 462 (1951) (Supreme

Court recognized federal agencies' ability to issue regulations

regarding employees' testimony and production of documents.  An

agency's regulations regarding testimony by its employees are

often called "Touhy regulations." ).  I find that 31 CFR § 1.11

contains BPD's *Touhy* regulations.  BPD argues that the scope of

the Rule 30(b)(6) notice would cause an undue burden, would

consume a large amount of government time and money for private

purposes, and would require BPD to restore and review at least

126 email backup tapes, which would take an estimated 230 hours

and result in a cost of over $13,000;

6.     That CSB terminated Plaintiff because its investigation determined

that Plaintiff:

          a.     Misused his government-travel charge card 349 times

                 for a total of more than $25,000 in charges by using it

---

Service were consolidated and redesignated as the Bureau of the Fiscal Service.

4

for purposes other than government travel;

b.      Failed to pay the balance of his government- travel

charge card timely for 67 of the 86 billing periods he

held the card; and

c.      Used his government-issued laptop to store sexually-

oriented materials, including pictures and videos

containing nudity; used his government email account

to send sexually-oriented emails; and used his

government cell phone to receive a sexually-explicit

photo he requested using his government email

account.   See exhibit 1 ( Proposal to Remove) at 2-6

and exhibit 2 (Decision of Remove) attached to

subject motion (docket no. 52);

7.      That per the Joint Status Report (docket no. 67), the Plaintiff agrees

that the emails of Sue Burton, a former BPD employee, need not be

reviewed in order to prepare for the Rule 30(b)6) deposition.  The

Rule 30(b)(6) deposition notice covers certain communications from

August 1, 2004, to November 16, 2009.  See docket no. 59-10.

Accordingly, Plaintiff is now seeking the emails from former BPD

employees Robyn Rice and Pam Enlow only during the relevant

time frame listed above;

8.      That the emails that Plaintiff is seeking are maintained only on the

active server for 90 days and are stored on backup tapes that are

5

stored offsite, unless they are individually archived.  Both Rice and

Burton retired from BPD in or about December 2011, so the backup

tapes are the only source for their emails.  BPD estimates that

there are a total of 126 email backup tapes that BPD would have to

restore to the server in order to access the email data requested for

Rice and Burton.  As mentioned above, this task of restoring emails

for the above time frame could require up to 230 hours of time to do

at a cost of roughly $13,000;

9. That per 31 CFR § 1.11(c), no BPD employee may provide

testimony regarding "any information relating to or based upon

Department documents, or disclose any information or produce

materials acquired as part of the performance of that employee's

official duties or official status, without the prior authorization" of

appropriate agency counsel.  I find that a Rule 30(b)(6) deposition

falls under this requirement;

10. That 31 CFR § 1.11(e) outlines relevant factors when BPD decides

to approve testimony by an employee, including:

(i)     Whether the request or demand is unduly burdensome;

...

(iii)   Whether the time and money of the United States would be

used for private purposes;

...

(iv)   The extent to which the time of employees for conducting

6

official business would be compromised;

...

(vi)     Whether the request demonstrates that the information

requested is relevant and material to the action pending,

genuinely necessary to the proceeding, unavailable from

other sources, and reasonable in its scope;

11.     That demand for the emails of Rice and Enlow during the relevant

period is unduly burdensome, noting that the BPD would have to

expend roughly 230 hours of time by its employees to restore the

requested emails at a cost of over $13,000;

12.     That the use of government time and money for private purposes

would be roughly 230 hours of time of Nonparty BPD employees to

restore the requested emails at a cost of over $13,000;

13.     That the BPD employees' official duties would be compromised

substantially, noting that roughly 230 hours of time would be spent

restoring these emails, and such employees of the BPD would be

unavailable to perform their official day-to-day duties; and

14.     That Plaintiff''s Attorney Mr. Roseman's affidavit [exhibit 10

attached to the subject motion (docket no. 52)] does not

demonstrate why the requested information above is relevant.

However, during the hearing before this court on the subject motion

(docket no. 52), Plaintiff's attorney Mr. Roseman proffered that the

requested information is relevant on the issue of pretext.  In

7

essence, Plaintiff argues that the requested information will show that misconduct of the same type or magnitude [i.e., misuse of government-travel charge credit cards] by other fellow employees who were not disciplined or terminated.  Plaintiff has already received information required for this analysis from CSB and from Citi.  Under this theory, Plaintiff will not only have to show fellow employees misused government travel charge credit cards, but he must also show that the decisionmakers were aware of the comparator's characteristics.  See Swackhammer v. Sprint/United Management Co., 493 F.3d 1160, 1170 (10th Cir. 2007) (in evaluating pretext, "it is not what [the decisionmaker] *should* have known that matters, but whether he acted in good faith on the beliefs he held.").  In this case, Plaintiff has failed to demonstrate through any evidence that the costly and burdensome discovery from BPD that Plaintiff seeks would show that the decisionmaker was aware of a comparator's relevant characteristics.  Lastly, Plaintiff has not presented any evidence that the additional preparation and expense he seeks to impose upon BPD, as outlined above, is reasonably calculated to lead to admissible evidence regarding a comparator.  Accordingly, the Motion to Quash by Nonparty Bureau of the Fiscal Service (docket no. 52) and (2) the Motion for Protective Order by Nonparty Bureau of the Fiscal Service (docket no. 54) should both be granted.

8

## ORDER

**WHEREFORE**, based upon these findings of fact and conclusions of law this

court **ORDERS**:

1. That the Motion to Quash by Nonparty Bureau of the Fiscal Service

  (docket no. 52) is **GRANTED**;

2. That the Motion for Protective Order by Nonparty Bureau of the

  Fiscal Service (docket no. 54) is **GRANTED**; and

3. That each party shall pay their own attorney fees and costs for this

  motion.


Done this 19th day of June 2013.

       BY THE COURT

       s/Michael J. Watanabe
       MICHAEL J. WATANABE
       U.S. MAGISTRATE JUDGE